

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

D-1 TAREK MAKKI,

Defendant.

_____/

CRIMINAL NO. 03-80617
HON. AVERN COHN

OFFENSES:
    18 U.S.C. § 371 (Conspiracy) [5yrs. and/or $250,000 fine]
    18 U.S.C. § 1001 (False Statements) [5yrs. and/or $250,000 fine]
    18 U.S.C. §1956(h) (Money Laundering Conspiracy)[20yrs. and/or $500,000 fine or twice the value of the property - @$1.8 million]
    18 U.S.C. § 2320 (Trafficking in Counterfeit Goods) [10yrs. and/or $2,000,000 fine]

CRIMINAL NO.3:05-CR-239-M
(Information filed in United States District Court, Northern District of Texas)

OFFENSE:
    18 U.S.C. § 1623 (Perjury) [5yrs. and/or $250,000 fine]

## RULE 11 PLEA AGREEMENT

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, defendant, defendant's attorney, and the United States Attorneys for the Eastern District of Michigan, and the Northern District of Texas ("U.S. Attorney") (collectively "the parties") agree as follows:

1

2:03-cr-80617-AC Doc # 73 Filed 10/05/05 Pg 2 of 15 Pg ID 177

1.    Guilty Plea.

A.    Pursuant to Rule 20 of the Federal Rules of Criminal Procedure, the Defendant agrees to transfer to the Eastern District of Michigan, Southern Division, one Information from the Northern District of Texas, Dallas Division, docketed at CRIMINAL NO.3:05-CR-239-M . Defendant further agrees that this transferred Information will be consolidated for plea and sentencing with the Second Superseding Indictment filed against this Defendant in the Eastern District of Michigan, Southern Division, docketed at 03-80617, before the Honorable Avern Cohn.

B.    Defendant will plead guilty to counts one, two, six, eight and ten, of the Second Superseding Indictment, and count two of the Information filed in the Northern District of Texas, Dallas Division. The defendant reserves the right to exclude the allegations contained in Overt Act 45 of Count One from his plea of guilt.

C.    The elements of the offense(s) that the government would need to prove beyond a reasonable doubt at trial are: See Attachment A.

D.    The parties stipulate that the following facts are true: See Attachment B.

2.    Sentence Agreement.

A.    Imprisonment. There is no agreement between the parties on the factors to be considered in calculating the appropriate sentence range under the sentencing guidelines promulgated under 28 U.S.C. § 994(a). The Court may accept or reject the positions of the parties. The government and the defendant retain any rights they may have to appeal any

2

sentence imposed pursuant to an incorrectly calculated guideline range, or a sentence which is outside the applicable guideline range. However, pursuant to Rule 11(c)(1)(B), the parties recommend to the Court that the sentence imposed on the Second Superseding Indictment be followed by a term of supervised release of between 2 and 3 years. The parties also recommend that any sentence imposed on the Information filed in the Northern District of Texas run concurrently. The parties understand that their recommendation is not binding on the Court, and that if the Court does not follow the recommendation, defendant will have no right to withdraw his guilty plea.

B.      Fine. Pursuant to Rule 11(c)(1)(C), the U.S. Attorney agrees that a fine no higher than the top of applicable guideline range for fines is an appropriate disposition of the case.

C.      Supervised release violations. The court will impose a term of supervised release to follow imprisonment. If defendant violates a condition of release, the court will then be able to impose an additional prison sentence that could be as long as the original term of release. This agreement does not limit the sentence the court could impose in that situation.

D.      Special Assessment. Defendant must pay a special assessment of $600 and must bring the receipt to court on the day of sentencing.

E.      Restitution. Defendant agrees that the court shall order restitution, pursuant to any available provision of law, for any loss caused to: (1) the victims of any offense

3

charged in this case (including dismissed counts), and (2) the victims of any criminal activity that was part of the same course of conduct or same scheme or plan as defendant's charged offenses.

F.    Unfiled Tax Returns. The defendant is to fully cooperate with the Internal Revenue Service by filing all returns (including 1040s and amended returns where appropriate) for any tax years where defendant and/or his wife, have failed to file income tax returns, and timely filing all future returns that come due during the period of probation or supervised release. These returns must be true and correct and must report all taxable income and claim only allowable expenses.    The defendant is to provide all appropriate documentation in support of said returns. The defendant is to furnish the Internal Revenue Service with information pertaining to all assets and liabilities. The defendant is to fully cooperate in determining defendant's corrected tax liability and any assessed penalties and applicable interest owed thereon. Defendant will make satisfactory payment arrangements for the payment of all taxes, interest and penalties due and will otherwise comply with the tax laws of the United States.

3.    Other Charges. The U.S. Attorney agrees that it will not further prosecute defendant for any other criminal charges which are based upon defendant's involvement in the trafficking of counterfeit products, namely cigarette papers or any other criminal charges known to the U. S. Attorney, and could in the opinion of the U. S. Attorney be charged against the defendant, before or at the time of his sentencing in this case.

4

4.     Subsequent challenges to conviction or breach of agreement.

A.     If at any time defendant tries to withdraw the guilty plea to any count; attacks the validity of the conviction on any count; or fails to comply with the terms of the agreement, the U. S. Attorney is released from its promises under this agreement and, in particular, may prosecute defendant on any charge that it agreed to dismiss or not to bring. In addition, if defendant's conviction on any count is vacated, the U. S. Attorney may request resentencing on any remaining count.

B.     Defendant waives a double jeopardy defense as to any charges the U. S. Attorney brings or pursues under the previous paragraph. Defendant waives any speedy trial or statute of limitations defense for the period of time between the date defendant signed this agreement and (a) the date an order permitting withdrawal of the plea, vacating the plea, or reversing the conviction on any count becomes final, or (b) the date the U.S. Attorney notifies defendant in writing of defendant's failure to comply with the agreement; whichever is later.

5.     Defendant's waiver of appeal rights. If the court imposes a sentence equal to or less than the sentence described in ¶ 2 of this agreement, defendant waives all appeal rights, including all rights under 28 U.S.C. §1291 to appeal the conviction, and all rights under 18 U.S.C. § 3742 to appeal the sentence imposed. Whatever sentence is imposed, defendant waives all appeal rights to challenge the constitutionality of the sentencing guidelines.

5

6.    Defendant's waiver of right to indictment on sentencing factors. Defendant agrees that any fact that is relevant to the determination of his/her offense level or to his/her criminal history category under the sentencing guidelines need not be alleged in the document containing the charge(s) to which he/she is pleading guilty. To the extent defendant has the right to be formally charged with any such fact in an indictment returned by a grand jury, defendant waives that right.

7.    Defendant's waiver of right to jury trial on sentencing factors. Defendant agrees that any fact that is relevant to the determination of his/her offense level or to his/her criminal history category under the sentencing guidelines will be determined either (1) by agreement between the parties or (2) by the Court by a preponderance of the evidence based on any information or evidence the Court finds reliable, including hearsay. To the extent defendant has the right to have a jury determine the existence of any such fact by proof beyond a reasonable doubt under the Federal Rules of Evidence, defendant waives that right.

8.    Defendant's waiver of jury trial and appeal rights. By entering into this plea agreement and pleading guilty, defendant waives any and all rights he may have under the Sixth Amendment to have the pertinent facts of his case determined by a jury. If the court imposes a sentence within the range described in ¶ 2 of this agreement, defendant further waives any right he may have to appeal his conviction or sentence.

6

9.    STIPULATION  FOR FORFEITURE OF PROPERTY

Defendant TAREK MAKKI agrees to forfeit,  pursuant to 18 U.S.C. §981(a)(1)(C),

without contest, his right, title and interest in Thirty Five Thousand Three Hundred Seventy-

Nine dollars and Ninety Four cents in U.S. currency ($35,379.94) representing the proceeds

from the sale of the vacant land situated between 25756 and 27650 Cherry Hill Road,

Dearborn, Michigan more particularly described as:

East 100 feet of Lot 24, Gregory Meadows Subdivision, Liber 67, Page 8 of Plats,

Wayne county Records. Parcel I.D. No. 33033010024302.

Defendant TEREK MAKKI, further agrees that the $35,379.94 is forfeitable to the

United  States under 18 U.S.C. §§981(a)(1)(C) in that the funds represent property that was

obtained, directly or indirectly, as the result of a violation or violations of 18 U.S.C. §371.

The $35,379.94 constitutes or is derived from proceeds traceable to a violation of 18 U.S.C.

§ 371 (Conspiracy to Traffic in and Smuggle Counterfeit Goods) to wit: trafficking in goods,

that is: counterfeit Zig Zag® cigarette paper products and knowingly using a counterfeit

mark on and in connection with such goods in violation of 18 U.S.C. § 2320; fraudulently

and knowingly smuggling merchandise into the United States contrary to law, in violation

of 18 U.S.C. § 545; and wire fraud in violation of 18 U.S.C. § 1343 and therefore is

forfeitable pursuant to 18 U.S.C. § 981(a)(1)(C).

Defendant Terek Makki agrees to consent to entry of an order of forfeiture in any civil

proceeding,  and to cooperate with the Government by taking whatever steps are necessary

7

to pass clear title to the $35,379.94, including, but not limited to, completing any legal documents required for the transfer of assets to the United States and providing testimony in the civil forfeiture action with regard to the above-described $35,379.94.

The above-described funds are in fact, property that was involved in and are proceeds traceable to a conspiracy to commit the specified unlawful activities of trafficking in goods, that is: counterfeit Zig Zag® cigarette paper products and knowingly using a counterfeit mark on and in connection with such goods in violation of 18 U.S.C. § 2320; fraudulently and knowingly smuggling merchandise into the United States contrary to law, in violation of 18 U.S.C. § 545; and wire fraud in violation of 18 U.S.C. § 1343, in violation of 18 U.S.C. § 371.

Defendant Terek Makki agrees to waive any Double Jeopardy challenges he may have resulting from the civil forfeiture of the $35,379.94. Defendant Terek Makki agrees to waive any claims, defenses or challenges arising under the Excessive Fines Clause fo the Eight Amendment resulting from any civil forfeiture action.

10.     No other terms. This document is the entire agreement between defendant and the U.S. Attorney with respect to the charges noted above in this criminal case. It does not prevent any civil or administrative actions against defendant or any property by the U.S. Attorney or any other party. There are no other parties to this agreement.

8

STEPHEN J. MURPHY
United States Attorney

Dated:

_____
ERIC M. STRAUS
Assistant U.S. Attorney

Dated: 10/5/05

_____
GARY FELDER
Assistant U.S. Attorney

By signing this document, the defendant acknowledges that he has read (or been read) this entire document, understands it and agrees to its terms; and also acknowledges that he is satisfied with his attorney's advice and representation.

Dated: 10/5/05

_____
Tarek Makki
Defendant

Dated: 10/5/05

_____
James Thomas
Attorney for Defendant

9

Attachment A.

## ELEMENTS OF THE OFFENSE
### Count One
## CONSPIRACY
### (18 U.S.C. Section 371)

One: The conspiracy, agreement, or understanding to engage in the trafficking of counterfeit goods, smuggling and wire fraud, as described in the Second Superseding Indictment, was formed, reached, or entered into by two or more persons;

Two: At some time during the existence or life of the conspiracy, agreement, or understanding, one of its alleged members knowingly performed one of the overt acts charged in the indictment in order to further or advance the purpose of the agreement; and

Three: At some time during the existence or life of the conspiracy, agreement, or understanding, defendant knew the purpose of the agreement, and then deliberately joined the conspiracy, agreement, or understanding.

### Count Two
## MONEY LAUNDERING CONSPIRACY
### (18 U.S.C. Section 1956(h))

One: The conspiracy, agreement, or understanding to commit money laundering, as described in the Second Superseding Indictment, was formed, reached, or entered into by two or more persons;

Two: At some time during the existence or life of the conspiracy, agreement, or understanding, defendant knew the purpose of the agreement, and then deliberately joined the conspiracy, agreement, or understanding.

### Counts Six, Eight and Ten
## FALSE STATEMENTS
### (18 U.S.C. Section 1001)

One: The defendant knowingly made a false, fictitious, or fraudulent statement or representation to the government as detailed in the Second Superseding Indictment;

Two: In making the false, fictitious, or fraudulent, statement, the defendant acted willfully;

Three: The statement was made in a matter within the jurisdiction of any department or agency of the United States; and

Four: The statement made was material.

## Count One
## [Information filed in Northern District of Texas]
## FALSE DECLARATIONS BEFORE A COURT
## (18 U.S.C. Section 1623)

One: The defendant gave testimony under oath before a federal court;

Two: The defendant made the false material statements as detailed in the information during that testimony; and

Three: Defendant knew that the statements were false when he gave the testimony.

**(Attachment B.)**

## FACTUAL BASIS

### COUNTS ONE AND TWO

At all times material to this indictment, TAREK MAKKI was involved in the organization to traffick in counterfeit ZIG ZAG papers. He traveled to Indonesia and stayed for weeks at a time to oversee the Jakarta operation. He was responsible for directing Anand Nanwani and Jaipal Singh to produce the counterfeit material and he facilitated the smuggling of the counterfeit Zig Zag cigarette papers into the United States. In this regard, he would provide Nanwani and Singh with fictitious company names and invoices to be use in the exportation of the counterfeit Zig Zag cigarette papers from Jakarta. These fictitious company names and invoices would ultimately be provided to U.S. Customs to clear customs in the United States. Additionally, TAREK MAKKI would make extensive use of nominees to wire money payments to Nanwani and Singh and to deliver the counterfeit merchandise to various interim storage locations to await final distribution in the United States.

TAREK MAKKI was not licensed to manufacture, import nor distribute Zig Zag® cigarette paper products.

For over a century, the "Zig-Zag" trademark and the depiction of a bearded man (the "Smoking Man Design") trademark (collectively, the "Zig-Zag® Trademarks" have been used in connection with various cigarette paper products, cartons, cases and booklets produced by Bollore, Inc. Bollore was and is an internationally known distributor of specialty paper products, and both the Zig-Zag® and Smoking Man Design® trademarks have been registered by Bollore with the United State Patent and Trademark Office.

Bollore owned the trademark registrations for Zig Zag® Trademarks in the United States and in various countries throughout the world, and has granted an exclusive license to North Atlantic Trading Company and its subsidiary, North Atlantic Operating Company (hereinafter "NATC") in the United States for the importation and distribution of Zig Zag® cigarette paper products.

Between August 1999, when the idea of counterfeiting U.S. Zig Zag® paper products was presented to Anand Nanwani by co-conspirator Jihad "Joe" Makki at a Las Vegas trade show, in the Spring of 2000, Nanwani and Jaipal Singh set up a

1

factory, and hired several workers, to counterfeit U.S. Zig Zag® products in Jakarta, Indonesia. Nanwani and Singh received inferior and different grade non-U.S. bound cigarette papers from various suppliers outside of the United States. TAREK MAKKI and ADHAM MAKKI, arranged to have the paper shipped to Indonesia. At the factory, the cigarette papers were disassembled and placed in counterfeit U.S. Zig Zag® packaging procured by Nanwani and Singh, from local Indonesian printers.

Nanwani and Singh began counterfeiting Zig Zag® cigarette paper products in 2000. In approximately May 2000 they began, at the direction of Jihad "Joe" Makki, and later TAREK MAKKI and ADHAM MACKIE, to import the counterfeit product into various United States ports of entry including Detroit, Michigan. Nanwani and Singh continued to ship counterfeit Zig zag® cigarette papers to the United States through February of 2004. In the later phases of the conspiracy, the counterfeit product would be shipped through Brussels, Belgium, before arriving in the United States.

Upon arrival in the United States, the counterfeit Zig Zag® cigarette paper products were then distributed by TAREK MAKKI and ADHAM MACKIE and other co-conspirators and sold throughout the United States at prices well-below those that are, or can be offered, for the genuine corresponding U.S. Zig Zag® cigarette paper products in the United States. Consumers of the counterfeit product would be thereby defrauded by the booklets, cases and cartons bearing counterfeit Zig Zag® markings, which markings were identical with and substantially indistinguishable from genuine marks in use and registered for those goods on the principal register in the United States Patent and Trademark Office. The use of counterfeit markings was intended by the conspirators, including TAREK MAKKI and ADHAM MACKIE, to cause confusion, to cause mistake and to deceive.

TAREK MAKKI and ADHAM MACKIE used several business names to export counterfeit Zig Zag® products produced by Nanwani and Singh out of Indonesia for importation into the United States. PT SAMI TRADING, Bandung, Indonesia was one fictitious company used to facilitate the imports of counterfeit Zig Zag® cigarette papers into the United States. Med-USA and Taj Trading were two other fictitious companies used to facilitate the importation of the counterfeit Zig Zag® into the United States. TAREK MAKKI and ADHAM MACKIE would provide other co-conspirators with the capability to create computer generated invoices in Jakarta, Indonesia. The invoices included the purported letterhead of fictitious companies and

2

fictitious Indonesian addresses.

TAREK MAKKI and ADHAM MACKIE would arrange for Nanwani and Singh to received payment for the manufacture of counterfeit Zig Zag® cigarette paper products via wire transfers from financial institutions and Western Union. Western Union, a licensed money transfer and message service operates in the United States and other countries in the world. Western Union utilizes electronic fund transfers to facilitate the transfer of money from one location to another on behalf of customers. The payments were made directly to Nanwani or his partner Singh. The majority of the wire transfers were under three thousand dollars ($3,000) because of a Western Union reporting requirement that requires a social security number of the payee.

TAREK MAKKI instructed Anand Nanwani to provide accounts in Indonesia in order to disguise his involvement in the counterfeiting scheme. Wire transfers to PT WIC and PT CITRA represented wire transfers payment for counterfeit Zig Zag® cigarette papers. All wire transfers that Nanwani and Singh received from TAREK MAKKI and ADHAM MACKIE were for the production of counterfeit Zig Zag® cigarette papers.

Approximately 219 wire transfers totaling eight hundred seventy nine thousand and fifty six dollars ($879,056.00) from TAREK MAKKI and ADHAM MACKIE with regard to the distribution of counterfeit Zig Zag® cigarette paper products were made to Nanwani and Singh in Indonesia. The wire transfers to NANWANI and SINGH include the period of March of 2000 to December of 2002. The financial transactions were facilitated at Western Union and financial institutions located in the Detroit metropolitan area.

## COUNTS SIX, EIGHT AND TEN

On or about May 4, 2004, June 15, 2004 and again on or about July 27, 2004 in Detroit Michigan, TAREK MAKKI, during a law enforcement debriefing in a matter within the jurisdiction of the U.S. Department of Justice, an agency of the United States, did knowingly and willfully make false, fictitious and fraudulent material statements, in that he claimed that he stopped distributing and selling counterfeit Zig Zag® cigarette paper products in June 2003, with regard to Count Six; and that he stopped distributing and selling counterfeit Zig Zag® cigarette paper products in June 2003, with regard to Count Eight and that he stopped distributing

3

and selling counterfeit Zig Zag® cigarette paper products in June-July 2003, with regard to Count Ten which statements he knew were false, because he continued to traffic, distribute and sell counterfeit Zig Zag® cigarette paper products in the U.S. through out this period of time until at least September 2004.

Count One
[Information filed in Northern District of Texas]
FALSE DECLARATIONS BEFORE A COURT
(18 U.S.C. Section 1623)

TAREK MAKKI adopts and incorporates by reference all of the allegations contained in Count One of the Information filed in the Northern District of Texas which charges a violation of FALSE DECLARATIONS BEFORE A COURT (18 U.S.C. Section 1623).

4
